## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| UNITED STATES OF AMERICA | * |
| v. | *    Criminal Action No. RDB-22-220 |
| | Civil Action No. RDB-25-1232 |
| | * |
| SUMMER NICHOLE McCROSKEY, | * |
| *Defendant.* | * |
| | * |

\*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*

## MEMORANDUM OPINION

Petitioner Summer Nichole McCroskey is serving a 960-month prison sentence after pleading guilty, without a written plea agreement, on February 2, 2023, to conspiracy to commit sexual exploitation of a child, in violation of 18 U.S.C. § 2251(e); seven counts of sexual exploitation of a child, in violation of 18 U.S.C. § 2252(a)(2); and three counts of possession of child pornography, in violation of 18 U.S.C. § 2252A(a)(5)(B). (ECF Nos. 43, 44.) In its Sentencing Memorandum, the Government sought a sentence of 2,760 months, or 230 years. (ECF No. 63 at 2 \*SEALED\*.) McCroskey asked the Court to impose the mandatory-minimum 180-month, or fifteen-year, sentence. (ECF No. 56 at 2 \*SEALED\*.) On May 18, 2023, the Court sentenced McCroskey to 960 months, or eighty years, a term within the Sentencing Guidelines range. (ECF No. 70.) The Court also imposed eighty years of supervised release. (*Id.*)

1

Now pending is McCroskey's pro se § 2255 Motion (ECF No. 108)[1] in which she raises several arguments to vacate or correct her sentence. The Government filed a Response. (ECF No. 114.) The Court has reviewed the parties' submissions; no hearing is necessary. *See* Loc. R. 105.6 (D. Md. 2025). For the following reasons, McCroskey's § 2255 Motion (ECF No. 108) is DENIED.

## BACKGROUND

### I.    Factual History

McCroskey and her husband and co-defendant Lawrence Aquilla Colby IV[2] brutally and serially sexually abused their daughter, Jane Doe, from the time she was three months old until she was two years old. (ECF No. 114 at 1.) Jane Doe was born in October 2019. (*Id.* at 1–2.) Beginning on January 21, 2020, when Jane Doe was only three months old, McCroskey produced a video and images depicting Jane Doe naked with her genitals exposed. (*Id.* at 2.) In the video, McCroskey slapped Jane Doe's buttocks. (*Id.*) This behavior escalated as time went on. For example, in February 2020, McCroskey and her husband produced a video and images that showed Jane Doe, then just four months old, naked, with her genitals exposed, and with McCroskey slapping her buttocks while her husband, Colby, forced his penis into her mouth. (*Id.*) Later, in March 2020, McCroskey produced videos and images in which she fondled and spit on Jane Doe's exposed genitals. (*Id.*) Also in March 2020, McCroskey

---

[1] Unless otherwise noted, all docket references are to McCroskey's criminal case, RDB-22-220.

[2] Colby pleaded guilty and was sentenced to a total term of six hundred months (fifty years) of imprisonment.

produced further videos and images in which she placed her tongue and finger on Jane Doe's genitals while also using her finger to penetrate Jane Doe's anus. (*Id.*)

In October 2021, when Jane Doe was two years old, McCroskey produced videos and images in which she used her hand to touch Jane Doe's genitals. (*Id.*) She then sent those files to her husband with a message telling him that she was excited to help him "rape and . . . molest" their daughter, Jane Doe. (*Id.*) On October 19, 2021, Colby sent McCroskey a message telling her that he was thinking about "doing dirty pedo things. Like training [Jane Doe] to be a little fuck toy." (*Id.*) McCroskey responded that she could not wait to watch Colby "molest" Jane Doe the next day. (*Id.*) On October 20, 2021, Colby and McCroskey bound Jane Doe's arms and legs and Colby anally raped her. (*Id.*) McCroskey produced videos and images of the rape. (*Id.*) McCroskey used an encrypted messaging application to send the files of the rape to Colby with a message reading, "that's you inside of her." (*Id.* at 2–3.) McCroskey proceeded to send the video of the rape to another person and told Colby that she wanted to make more videos like it. (*Id.* at 3.) On October 25, 2021, McCroskey and Colby again restrained Jane Doe. (*Id.*) McCroskey videotaped Colby vaginally and anally raping the two-year-old. (*Id.*) On the video, Jane Doe is screaming, which McCroskey says sounds like "moaning." (*Id.*)

McCroskey produced these videos and images on her mobile phones. (*Id.*) At least four separate times in 2020 and 2021, she used an encrypted application to distribute files of Jane Doe's abuse to others on the Dark Web and to Colby. (*Id.*) In December 2021, McCroskey also distributed child pornography other than what she and Colby made containing Jane Doe. (*Id.*)

3

In addition to these horrific acts and statements, the Government also produced significant and separate evidence of McCroskey's sexual attraction to infants. (*Id.* at 7.) In particular, the record contains statements McCroskey made in 2017 to her then-boyfriend while she was pregnant with a different daughter, not Jane Doe. (*Id.*) In those messages, McCroskey indicated an intent to abuse and rape the child once born. (*Id.*) In other messages from that time with the same man, McCroskey discussed prior sexual abuse of *another* infant. (*Id.*) She stated that she had taken pictures of that infant's genitals. (*Id.*) These messages were later discovered by that child's family and then the California Child Protective Services, which subsequently removed McCroskey's older daughter from her care. (*Id.* at 8.)

## II.    Procedural History

On February 11, 2022, McCroskey and Colby were arrested by agents of the Federal Bureau of Investigation. (*Id.*) On June 21, 2022, a federal grand jury returned an indictment charging McCroskey with conspiracy to commit sexual exploitation of a child, in violation of 18 U.S.C. § 2251(e); eight counts of sexual exploitation of a child, in violation of 18 U.S.C. § 2251(2); five counts of distribution of child pornography, in violation of 18 U.S.C. § 2252(a)(2); and three counts of possession of child pornography in violation of 18 U.S.C. § 2252A(a)(5)(B). (ECF No. 1.) The Government specifically declined to offer a plea agreement. (ECF No. 114 at 8.) On February 2, 2023, McCroskey pleaded guilty to all counts. (ECF No. 44.)

In anticipation of sentencing, the Presentence Report calculated McCroskey's offense level to be a 43, the highest level in the Sentencing Guidelines table. (ECF No. 114 at 9.) The Probation Officer assigned to this case recommended a sentence of 4,800 months, or 400

years, of imprisonment. (*Id.*) The Government sought a sentence of 2,760 months, or 230 years, based on the statutory maximum penalty for all counts to which McCroskey pleaded guilty. (ECF No. 63 at 2 *SEALED*.) McCroskey sought the mandatory-minimum 180-month, or fifteen-year, sentence. (ECF No. 56 at 2 *SEALED*.)

This Court held a sentencing hearing on May 18, 2023. (ECF No. 70.) The Court confirmed that McCroskey had reviewed the Presentence Report with her attorney multiple times, without objection. (*Id.*) The Court determined that McCroskey's final offense level was 43 and that she had a criminal history category of I, resulting in a Sentencing Guidelines range of life imprisonment. (*Id.*) The Court heard argument from both parties on the length of sentence to be imposed, and told the parties that it had reviewed the abusive videos and images with counsel in advance of the sentencing hearing. (*Id.*) After considering on the record the factors set out in 18 U.S.C. § 3553(a), the Court imposed a sentence of 960 months, or 80 years, of imprisonment. (*Id.*) The Court noted the heinous nature of the crimes done to Jane Doe as well as McCroskey's difficult childhood. (*Id.*) The Court particularly noted that it recognized that McCroskey's life "has been an almost continuous series of trauma" and acknowledged that McCroskey had suffered abuse as a child. (*Id.*) Nevertheless, the Court found McCroskey to be a serious threat to the community and that a life-equivalent sentence was proper. (*Id.*)

On May 23, 2023, McCroskey appealed the Court's sentence to the United States Court of Appeals for the Fourth Circuit. (ECF No. 72.) On April 12, 2024, the Fourth Circuit affirmed the district court's sentence as both procedurally and substantively reasonable. *United States v. McCroskey*, No. 23-4364, 2024 WL 1596670, at *1–2 (4th Cir. Apr. 12, 2024) (per

curiam) (unpublished). The Fourth Circuit noted both that McCroskey had not shown that her sentence was substantively unreasonable, and that this Court had "crafted a sentence that carefully considered the gravity of the offense, the deterrent effect of a lengthy sentence, and the need to protect the public" from McCroskey. *Id.* at *1. The Fourth Circuit also credited this Court's consideration of McCroskey's mitigation arguments, including her history of abuse and mental illness.

On April 11, 2025, one year after the Fourth Circuit's decision, McCroskey filed this pro se motion to vacate or modify her sentence under 28 U.S.C. § 2255. (ECF No. 108.) She alleges three grounds for relief: (1) ineffective assistance of counsel; (2) "judicial and prosecutorial misconduct and bias"; and (3) the "§ 3553(a) factors." (*Id.*) This matter is ripe for review.

## STANDARD OF REVIEW

This Court "liberally construe[s]" pro se filings and "h[olds] [them] to less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (internal citations and quotations omitted).

Under 28 U.S.C. § 2255, a prisoner in federal custody may seek federal habeas relief to vacate, set aside, or correct her sentence where: (1) "the sentence was imposed in violation of the Constitution or laws of the United States;" (2) "the court was without jurisdiction to impose such sentence;" (3) "the sentence was in excess of the maximum authorized by law;" or (4) the sentence is "otherwise subject to collateral attack." 28 U.S.C. § 2255(a). Federal habeas relief is "an extraordinary remedy," *Bousley v. United States*, 523 U.S. 614, 621 (1998), and is therefore cabined to those extreme cases in which a sentence represents a fundamental

constitutional or jurisdictional error. *United States v. Addonizio*, 442 U.S. 178, 185 (1979). Therefore, a district court may only modify or vacate a sentence in those rare cases in which not granting relief would "'inherently result[] in a complete miscarriage of justice.'" *Id.* (quoting *Hill v. United States*, 368 U.S. 424, 428 (1962)).

"[I]t is well settled that [a petitioner] cannot 'circumvent a proper ruling on . . . direct appeal by re-raising the same challenge in a § 2255 motion.'" *United States v. Dyess*, 730 F.3d 354, 360 (4th Cir. 2013) (quoting *United States v. Linder*, 552 F.3d 391, 396 (4th Cir. 2009)). A petitioner may not "recast, under the guise of collateral attack, questions fully considered by [the Court of Appeals on direct appeal]." *Boeckenhaupt v. United States*, 537 F.2d 1182, 1183 (4th Cir. 1976). Furthermore, "claims not raised on direct appeal may not be raised on collateral review unless the petitioner shows cause and prejudice." *Massaro v. United States*, 538 U.S. 500, 504 (2003) (citing *United States v. Frady*, 456 U.S. 152, 167–68 (1982); *Bousley*, 523 U.S. at 622).

Conversely, any "failure to raise an ineffective-assistance-of-counsel claim on direct appeal does not bar the claim from being brought in a later, appropriate proceeding under § 2255." *Massaro*, 538 U.S. at 509. An ineffective assistance of counsel claim requires that a petitioner satisfy the two-prong test set forth by the United States Supreme Court in *Strickland v. Washington*, 466 U.S. 668, 671 (1984). *See Roe v. Flores-Ortega*, 528 U.S. 470, 476–77 (2000) (applying *Strickland*'s two-prong test). A petitioner claiming "ineffective assistance of counsel must show (1) that counsel's representation 'fell below an objective standard of reasonableness,' and (2) that counsel's deficient performance prejudiced the defendant." *Id.* at 476–77 (quoting *Strickland*, 466 U.S. at 688, 694). The first prong, also called the "performance" prong, requires a petitioner to show that "counsel made errors so serious that

counsel was not functioning as the 'counsel' guaranteed by the Sixth Amendment." *Strickland*, 466 U.S. at 687. When courts undertake review of this first prong, they adopt a "strong presumption" that counsel's actions fall within the "wide range of reasonable professional assistance." *Id.* at 689. As regards the second prong, also called the "prejudice" prong, a petitioner must show that his counsel's errors deprived him of a fair trial. *Id.* To establish this level of prejudice, a petitioner must demonstrate that there is a "reasonable probability that, but for counsel's [alleged] unprofessional errors, the result of the proceeding would have been different." *Id.* at 694. A petitioner must meet both prongs of the *Strickland* test to be entitled to relief. *See id.* at 687.

## ANALYSIS

McCroskey raises three arguments to vacate or modify her sentence under 28 U.S.C. § 2255. (ECF No. 108.) First, she claims ineffective assistance of counsel by her trial counsel. (*Id.*) Second, she claims both judicial and prosecutorial misconduct. (*Id.*) Third, and finally, she claims relief pursuant to the factors guiding the imposition of sentences under 18 U.S.C. § 3553(a). (*Id.*) Relief is not merited under any of these arguments, and McCroskey's § 2255 motion is denied.

### I.    Ineffective Assistance of Counsel

McCroskey's first argument for habeas relief under § 2255 is that her trial counsel was constitutionally ineffective. (ECF No. 108 at 4.) She alleges seven separate instances of ineffective assistance: (1) counsel "[f]ailed to obtain expert psychosexual evaluation that would show McCroskey is not a threat to society"; (2) counsel "[d]id not argue that there was a disparity between potential sentence and the sentence of similarly situated offenders"; (3)

counsel did "[n]ot object[] to preponderance findings, that effected [sic] way defendant was presented to the court"; (4) counsel "failed to obtain a plea agreement, or any type of proffer with the court, even though she is thanked for admitting all facts early on and not going to trial"; (5) "proof of childhood trauma and severe mental health issues went undocumented by counsel"; (6) counsel "[f]ailed in their duty to make reasonable investigations in which may have insured [sic] a fair trial"; and (7) counsel "[d]id not show to Court, or make evident that McCroskey had been admitted to state mental hospital(s)." (*Id.*)

The Sixth Amendment guarantees a criminal defendant the representation of an attorney that falls "within the range of competence normally demanded of attorneys in criminal cases." *Strickland*, 466 U.S. at 687. A criminal defense attorney's representation of her client is evaluated from the attorney's perspective at the time of the trial. *Id.* at 689. Further, district courts "must be highly deferential" and "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Id.* It is the petitioner's burden to "overcome the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy.'" *Id.* (quoting *Michel v. Louisiana*, 350 U.S. 91, 101 (1955)). "Strategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable." *Id.* at 690–91. Put simply, *Strickland* sets a "high bar." *Padilla v. Kentucky*, 559 U.S. 356, 372 (2010).

As noted above, for a petitioner to succeed in showing ineffective assistance of counsel under *Strickland*, she must show both "(1) that counsel's representation 'fell below an objective standard of reasonableness,' and (2) that counsel's deficient performance prejudiced the defendant." *Flores-Ortega*, 528 U.S. at 476–77 (quoting *Strickland*, 466 U.S. at 688, 694). Showing

9

prejudice requires the petitioner to demonstrate "a reasonable probability that, but for counsel's [alleged] unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694. As the Supreme Court noted in *Padilla*, "it is often quite difficult for petitioners who have acknowledged their guilt to satisfy *Strickland*'s prejudice prong." *Padilla*, 559 U.S. at 371 n.12.

Applying *Strickland* here, McCroskey cannot show either objectively unreasonable representation by her trial counsel or that any allegedly deficient performance by her trial counsel actually prejudiced her. Given this Court's obligation to start from a "strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance," *Strickland*, 466 U.S. at 689, nothing in McCroskey's § 2255 motion overcomes that presumption.

First, McCroskey's claim of deficient assistance of counsel in not obtaining an expert psychosexual evaluation is insufficient to show either deficient performance or prejudice. Nothing in her § 2255 motion raises any inference that such an expert would have led to a decreased sentence. Indeed, the Probation Officer calculated the Guidelines sentence to be 400 years. (ECF No. 47.) The imposition of an eighty-year sentence reflected, as the Fourth Circuit noted, this Court's "careful[] consider[ation] of the gravity of the offense, the deterrent effect of a lengthy sentence, and the need to protect the public." *McCroskey*, 2024 WL 1596670, at *1. The Fourth Circuit affirmed that sentence as reasonable within this Court's discretion. *Id.* at *2. Therefore, even if McCroskey's trial counsel had secured an expert psychosexual evaluation, there is nothing in the § 2255 motion which shows that such an expert would have changed McCroskey's sentence. More to the point, however, the decision not to obtain such

an expert represents the discretionary and strategic decision of trial counsel after consideration of the law and facts, which *Strickland* calls "virtually unchallengeable."

Second, as regards McCroskey's multiple claims of ineffective assistance of counsel rooted in her own sexual trauma and history of mental health issues—including her admission to one or more state mental hospitals—the record in this case plainly indicates that the Court knew of and considered such trauma and history in imposing its sentence. *See* (ECF No. 70). These claims do not surmount either prong of the *Strickland* test. Third, McCroskey's allegation that her counsel failed to obtain a plea agreement or any type of proffer from the Government is factually insufficient because the Government explicitly declined to offer a plea deal in this case. (ECF No. 114 at 8.) Fourth, McCroskey's claims that her trial counsel did not argue about sentencing disparity nor object to preponderance findings fail to satisfy *Strickland*. As above, these decisions represent strategic decisions made by a criminal defense attorney. Nothing in the § 2255 motion creates any speculation that such decisions were objectively unreasonable. Indeed, to the allegation of sentence disparity, the Government's Response to the § 2255 motion (ECF No. 114) aptly notes that numerous Courts of Appeals have upheld similar sentences to McCroskey's for similar criminal behavior.[3] Therefore, even if trial counsel had raised a disparate sentence argument, such an argument would have failed. Stated simply, McCroskey is not entitled to relief on the basis of ineffective assistance of counsel.

---

[3] *See, e.g.*, *United States v. Beasley*, 688 F.3d 523, 536–37 (8th Cir. 2012) (upholding 290-year sentence for producer of child pornography); *United States v. Sarras*, 575 F.3d 1191, 1219–21 (11th Cir. 2009) (upholding 100-year sentence for sexual abuse of a thirteen-year-old girl, and creation of pornographic images of the victim); *United States v. Vowell*, 516 F.3d 503, 511–13 (6th Cir. 2008) (upholding sixty-five year sentence for man who had sexual intercourse with his girlfriend's eight-year-old daughter while the girlfriend videotaped it).

## II.      Judicial or Prosecutorial Misconduct or Bias

Second, McCroskey claims that there was judicial and prosecutorial misconduct and bias in her sentencing, and that this misconduct and bias entitle her to relief under § 2255. (ECF No. 108 at 5.) She particularly claims misconduct and bias in that: (1) the "Court failed to make findings of fact as to whether comments/diagnoses were correct, which may have altered Judge's sentencing"; (2) the "[g]overnment made inflammatory and malicious comments at sentencing, in which publicly humiliated and demeaned Petitioner by doing more than necessary to adhere to the goal at sentencing and violated the 6th [A]mendment right to be judged and adjudicated fairly"; (3) the "[g]overnment submitted character evidence that should not have been allowed as it prejudiced the judge and changed the outcome at sentencing"; (4) the "[g]overnment glossed over many [§] 3553 factors, such as disparities, history, and characteristics of defendant, and types of sentences available"; and (5) the "[g]overnment reached an unreasonably long sentence after overweighing one factor, protection of the public, while under weighing others, including mental health, difficult childhood, need to avoid unwarranted sentencing disparities, or that defendant was a special needs student." (*Id.*)

As the Government has aptly noted in its Response (ECF No. 114), claims of judicial misconduct or bias can be raised on direct appeal. *United States v. Frady*, 456 U.S. 152, 167–68 (1982). However, if a defendant fails to raise such a claim on appeal, it is improper to raise the issue for the first time through a § 2255 motion. *Id.*; *Massaro*, 538 U.S. at 504; *Bousley*, 523 U.S. at 622. As a result of McCroskey's failure to raise this contention on direct appeal, she must show satisfy a two-part "cause and actual prejudice" test set forth by the United States

Supreme Court in *Frady.* 456 U.S. at 167–68. McCroskey fails to establish any bias of this Court in comments made on the record during the May 18, 2023, sentencing hearing, which were based on McCroskey's admitted conduct.

With respect to alleged prosecutorial misconduct or bias, those claims could have been raised on direct appeal and are now procedurally barred. However, even if McCroskey had raised this issue, she fails to satisfy her heavy burden. There simply is no proffer of evidence that any misconduct of Government counsel infected the sentencing in this case "'with unfairness.'" *Darden v. Wainwright*, 477 U.S. 168, 181 (1986) (quoting *Donnelly v. DeChristoforo*, 416 U.S. 637, 643 (1974)). Nothing in McCroskey's § 2255 motion shows cause or actual prejudice. The conclusory allegations of "inflammatory and malicious comments" by the Government, *see* (*id.* at 5), are not supported by any factual material which could show cause or prejudice. Further, as regards prejudice, the United States Court of Appeals for the Fourth Circuit already deemed this Court's imposition of an eighty-year sentence to be both procedurally and substantively reasonable. *McCroskey*, 2024 WL 1596670, at *1. McCroskey's claim of judicial and prosecutorial misconduct is procedurally barred and does not provide entitlement to habeas relief under § 2255.

### III.    18 U.S.C. § 3553(a) Factors

McCroskey's final proffered ground for relief under § 2255 is simply that the Court should redo its analysis of the 18 U.S.C. § 3553(a) factors and impose a different, lesser sentence. (ECF No. 108 at 6.) As noted above, a petitioner may not use a motion under 28 U.S.C. § 2255 to "'circumvent a proper ruling . . . on direct appeal.'" *Dyess*, 730 F.3d at 360 (quoting *Linder*, 552 F.3d at 396). Additionally, a petitioner may not "recast, under the guise

13

of collateral attack, questions fully considered by [the Court of Appeals on direct appeal]." *Boeckenhaupt*, 537 F.2d at 1183. On direct appeal in this case, McCroskey asked the Fourth Circuit to reweigh the § 3553(a) factors. *McCroskey*, 2024 WL 1596670, at *1. The Court of Appeals "decline[d] [her] invitation," thus considering and denying her request. McCroskey is therefore barred from raising the § 3553(a) factors as a path to relief here.

## CONCLUSION

For the reasons stated above, McCroskey's § 2255 Motion is DENIED. Rule 11(a) of the Rules Governing Section 2255 Proceedings for the United States District Courts provides that the district court must "issue or deny a certificate of appealability when it enters a final order adverse to the applicant" on a § 2255 motion. A certificate of appealability may issue if the applicant has made a "substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). When a district court dismisses a § 2255 motion on procedural grounds without reaching the merits of the constitutional claim, an applicant must demonstrate that reasonable jurists "would find it debatable whether the petition states a valid claim of the denial of a constitutional right and . . . whether the district court was correct in its procedural ruling." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). When a district court rejects constitutional claims on the merits, an applicant satisfies the standard by demonstrating that "'jurists of reason could disagree with the district court's resolution of [the] constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further.'" *Buck v. Davis*, 580 U.S. 100, 115 (2017) (quoting *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003)). McCroskey has not made either requisite showing. The Court, therefore, declines to issue a certificate of appealability.

A separate Order follows.

Date: January 6, 2026

/s/
_____

Richard D. Bennett
United States Senior District Judge